# In the United States Court of Federal Claims

### No. 15-914C
### (Bid Protest)
### (Filed: February 17, 2016) [1]

```
* * * * * * * * * * * * * * * * * * * * * * * * *
                                   *
CADDELL CONSTRUCTION               *
COMPANY,                           *
                                   *
          Plaintiff,               *
                                   *
     v.                            *
                                   *
THE UNITED STATES,                 *
                                   *
          Defendant,               *
                                   *
     and                           *
                                   *
PERNIX GROUP, INC.,                *
                                   *
     and                           *
                                   *
FRAMACO INTERNATIONAL, INC.,       *
                                   *
          Intervenors.             *
                                   *
* * * * * * * * * * * * * * * * * * * * * * * * *
```

Post-award Bid Protest; 28 U.S.C. § 1491(b)(1); RCFC 52.1; Prequalification; Omnibus Diplomatic Security and Antiterrorism Act of 1986, 22 U.S.C. § 4852; "United States person;" Requisite Technical and Financial Resources in the United States; Statutory Interpretation; Remand.

Dirk Haire, Alexa Santora, and P. Sean Milani-nia, Fox Rothschild, LLP, 1030 15th Street, NW, Suite 380 East, Washington, D.C. 20005, for Plaintiff.

Benjamin C. Mizer, Robert E. Kirschman, Jr., Deborah A. Bynum, and Jessica R. Toplin, U.S. Department of Justice, Civil Division, Commercial Litigation Branch, P.O. Box 480, Ben Franklin Station, Washington, D.C. 20044, for Defendant.

---

[1]     The Court issued this opinion orally on February 10, 2016.  This opinion memorializes the Court's oral ruling.

The Court issued this opinion under seal on February 12, 2016, and directed the parties to file proposed redactions by February 17, 2016.  The Court publishes this Opinion indicating redactions by asterisks [***].

J. Randolph MacPherson and Rebecca Bailey Jacobsen, Halloran & Sage LLP, 1717 Pennsylvania Avenue, NW, Suite 675, Washington, D.C. 20006, for Intervenor Pernix Group, Inc.

Jonathan D. Shaffer, Smith Pachter McWhorter PLC, 8000 Towers Crescent Drive, Suite 900, Tysons Corner, VA 22182, for Intervenor Framaco International, Inc.

_____

**OPINION AND REMAND ORDER**
_____

**WILLIAMS**, Judge.

This post-award bid protest comes before the Court on the parties' cross-motions for judgment on the Administrative Record ("AR").  Plaintiff, Caddell Construction Company ("Caddell"), challenges the Department of State, Bureau of Overseas Building Operations' ("DOS") award of a contract to Framaco International, Inc. ("Framaco") for the construction of an embassy compound at Port Moresby, Papua New Guinea.  The procurement was conducted in two phases: a Phase I prequalification, and a Phase II technical and price evaluation.  With respect to Phase I, Plaintiff claims that DOS unlawfully prequalified Framaco under the Omnibus Diplomatic Security and Antiterrorism Act of 1986 ("the Security Act") because Framaco had not demonstrated that it was a "United States person" as required under the Security Act.  With respect to Phase II, Plaintiff claims that DOS erred in finding Framaco's proposal technically acceptable because Framaco had not demonstrated that it met the staffing and subcontracting requirements of the Solicitation.  Plaintiff requests that the Court declare the award unlawful, order DOS to terminate Framaco's contract, and award the contract to Caddell.

Plaintiff contends that DOS acted irrationally in prequalifying Framaco because Framaco lacked "existing technical and financial resources in the United States to perform the contract," as required by the Security Act.  Because DOS failed to articulate the rationale for its determination regarding Framaco's technical resources, this Court cannot determine whether DOS' decision to prequalify Framaco on this basis was arbitrary or capricious.[2]  As such, the Court remands this matter to DOS and directs DOS to articulate why it determined that Framaco had existing technical resources in the United States to perform the contract.[3]

---

[2]    The Court finds that DOS' decision to prequalify Framaco on the basis of its existing financial resources was rational.

[3]    This Court issued this opinion orally on February 10, 2016.  At that time, the Court indicated that it would issue a preliminary injunction pendente lite to accommodate the remand and this Court's ensuing review, unless Defendant could extend its voluntary stay beyond March 1, 2016.  On February 11, 2016, Defendant filed a notice stating:

> Defendant will voluntarily agree to suspend performance for an additional 90 days, to and including May 30, 2016.

## Findings of Fact[4]

### Notice of Solicitation

On March 17, 2015, DOS issued a Notice of Solicitation for the construction of an embassy compound at Port Moresby, Papua New Guinea, on a 7.26-acre property.  AR 1.  The project was to consist of new construction, limited demolition, and expansion of some of the existing structures.  Id.  The Notice of Solicitation valued the project at $89-$105 million.  Id.  Construction of the facility had begun in 2012, but, following a major revision in the project's scope, DOS suspended construction in 2014, at which point 40% of the work had been completed.  Id.  The successful bidder was to incorporate the work already completed and add perimeter security systems, a main compound access pavilion, a service compound access pavilion, a four-story office annex, a Marine Service Guard residence, a service/utility building, an enlarged single story support annex, and a recreation facility.  Id.  Award was to be made to the lowest priced technically acceptable offer.  AR 334.

### Phase I Requirements

The Security Act limits eligibility for bidding on diplomatic construction projects that exceed $10 million or involve technical security to "only United States persons and qualified United States joint venture persons."  22 U.S.C. § 4852(a) (2012).  The Notice of Solicitation informed prospective offerors of the Security Act's requirements and included a form for offerors to complete to demonstrate compliance.  AR 3.  Section 4852(c)(2) provides in pertinent part:

(2) the term "United States person" means a person which –

\*      \*      \*

(F) (i) employs United States citizens in at least 80 percent of its principal management positions in the United States,

(ii) employs United States citizens in more than half of its permanent, full-time positions in the United States, and

(iii) will employ United States citizens in at least 80 percent of the supervisory positions on the foreign buildings office project site; and

(G) has the existing technical and financial resources in the United States to perform the contract.

---

Defendant will complete its reevaluation and submit the additional documents for the administrative record by February 22, 2016.

Def.'s Not. (Feb. 11, 2016).  As such, the need for an injunction pendente lite is obviated.

[4]      These findings of fact are derived from the AR.  Additional findings of fact are in the Discussion.  The Court does not correct errors in quotations from the AR or the papers.

22 U.S.C. § 4852(c)(2)(F)-(G).

> The Department of State regulations implementing this section of the Security Act provide:

> Existing technical and financial resources means the capability of the prospective bidder/offeror to mobilize adequate staffing and monetary arrangements from within the United States sufficient to perform the contract. Adequate staffing levels may be demonstrated by presenting the resumes of current United States citizens and resident aliens with skills and expertise necessary for the work in which the prospective bidder/offeror is interested or some other indication of available United States citizen or permanent legal resident human resources. Demonstration of adequate financial resources must be issued by entities that are subject to the jurisdiction of United States courts and have agents located within the United States for acceptance of service of process.

48 C.F.R. § 652.236-72(d) (2015).

In order to be pre-qualified, offerors were required to complete "Certifications Relevant to Public Law 99-399, Statement of Qualifications for Purpose of Section 402 of [the Security Act]" ("Statement of Qualifications"). AR 12. This Statement of Qualifications form was attached to the Notice of Solicitation. AR 3. The Introduction section of this form provided:

> Section 402 of the Omnibus Diplomatic and Antiterrorism Act of 1986 provides that a "United States person" must meet certain requirements, listed in subsections 402(c) (2) and (3) of the Act, to be eligible for the statutory preference.[5] To assist individuals to determine whether or not they qualify as a U.S. person or U.S. joint venture person entitled to preference under Section 402, guidance is provided on this pre-qualification form.

> For ease of reference, the statutory language will be quoted immediately before the definitions that apply to it. Space for the information requested is provided immediately following definitions. The Department of State reserves the right, in its sole discretion, to interpret and apply the definitions to the information provided by each prospective offeror.

AR 13.

The Statement of Qualifications form contained a definition of the phrase "the existing technical and financial resources in the United States to perform the contract" that was substantively the same as DOS' regulation 48 C.F.R. § 652.236-72. AR 17-18.

---

[5]   This reference to a statutory preference should not be misconstrued. Although Section 4852(a) of the Security Act is titled "Preference for United States contractors," this statute mandates that an offeror qualify as a "United States person" in order to bid on diplomatic construction projects covered by the Security Act. 22 U.S.C. § 4852(a).

The Notice of Solicitation for the Port Moresby project further provided:

*3. Multiple Submissions Not Required*

Reference and review Notices of Solicitation of Submissions for Contractor Pre-Qualification for Department of State 2015 Design-Build Contracts for the following projects:

SAQMMA-15-R0192: Matamoros, Mexico NCC

SAQMMA-15-R0193: Colombo, Sri Lanka NEC

SAQMMA-15-R0197: Mexico City NEC[6]

Offerors may seek qualification for the project described in this announcement and any other project referenced above with a single submission.

AR 2.

The Notice of Solicitation cautioned potential offerors:

This [Security Act prequalification] is a pass/fail evaluated area. Submissions from Offerors who do not receive a pass rating in this area will not be further evaluated. Sufficient information should be provided in the Certifications and attachments thereto to determine eligibility under [the Security Act], but the Department reserves the right to consider other information available from other sources, or to obtain clarifications or additional information from the Offeror.

AR 3.

## Phase I Submissions

Ten firms submitted prequalification packages that indicated their intentions to bid on the Port Moresby project - - Framaco, Caddell, Pernix Group ("Pernix"), B.L. Harbert International ("B.L. Harbert"), ECC International ("ECCI"), Nan Incorporated, Perini Management Services ("Perini"), ACC Construction Company, Inc. ("ACC Construction"), American International Construction, Inc. – Special Projects ("AICI-SP"), and Watts Constructors ("Watts"). AR 101. Framaco and Caddell timely submitted their prequalification submissions seeking prequalification for the Matamoros, Colombo, and Port Moresby projects.[7] AR 6, 32. For the adequate staffing requirement, Framaco left blank the space designated for certification of the number of permanent, full-time positions that the offeror has in the United States. AR 141.1. Caddell certified that it employed [***] full time United States-based personnel. AR 146.

---

[6]     Prequalification decisions regarding Mexico City were postponed until after May 17, 2015. AR 101.

[7]     Framaco also indicated that it was seeking prequalification for an embassy construction project in Niamey, Nigeria.  AR 6.

For the adequate technical and financial resources requirement, Framaco attached to its Statement of Qualifications an April 15, 2015 letter from the [***], stating:

> [***] has provided surety credit to Framaco for an aggregate uncompleted backlog of USD [***] MILLION DOLLARS [***]. [***] will favorably consider providing performance and payment bonds if Framaco is awarded a satisfactory contract with the U.S. Department of State.

AR 141.9.

## DOS' Review of Phase I Submissions

On April 22, 2015, the Contracting Officer, S. Chrissie Fields,[8] sent a memo to DOS' Office of the Legal Adviser ("L/BA"), requesting a Security Act review for the firms that submitted prequalification packages for any of the three projects. AR 101. On June 8, 2015, L/BA responded in a memorandum, stating:

> In view of recent litigation over prequalification determinations, L/BA is expanding its documentation of its analysis of each prequalification submission to ensure that there is a record to demonstrate that each prequalification criterion has been considered. A separate page following a common template will be prepared for each potential offeror seeking to prequalify. This should also make it easier to update prequalification status as clarifications or additional information is received and evaluated.
>
> *       *       *
>
> L/BA reviews prequalification submissions to assess offeror eligibility under [the Security Act] and provides its findings and recommendations to the contracting officer, who makes the determinations of eligibility or ineligibility. The contracting officer should sign below if L/BA's findings and recommendations . . . herein are accepted. The contracting officer may seek further review or clarifications from L/BA or may make independent findings and determinations, which should be documented for the solicitation file.

AR 104-05. The memorandum contained the following signature block:

Accepted _____
            (Contracting Officer)


Date:

---

[8]     Throughout the majority of both Phases of the procurement, Chrissie Fields served as the Contracting Officer. By November 17, 2015, David Vivian had taken over as Contracting Officer, and Chrissie Fields served as Contracting Specialist. AR 1302.

AR 105.  This signature block on the June 8, 2015 memorandum is not signed by the Contracting Officer or dated.  Id.  There is no memorandum signed by the Contracting Officer indicating approval of prequalification of offerors in the AR.

The common template contained five Security Act requirements with blank spaces underneath for L/BA to complete.  The five requirements were stated as:

1.  Incorporation in the United States for at Least 5 Years

2.  Performed in U.S. or at U.S. Diplomatic or Consular Mission Construction Services Similar in Complexity, Type of Construction and Value to Project Being Bid

3.  Total Business Volume in 3 of 5 Years Equal to or Greater Than Value of Project Being Bid

4.  US Citizens in 80% of Principal Management Positions in U.S. and in More Than Half of All Permanent, Full-Time Positions in U.S.

5.  Technical and Financial Resources in United States Sufficient to Perform Contract

See, e.g., AR 106.

L/BA documented its review of the prequalification submissions for offerors seeking prequalification for Port Moresby, Matamoros, and/or Columbo by filling in a template for each offeror.

For Pernix, L/BA wrote:

**4. US Citizens in 80% of Principal Management Positions in U.S. and in More than Half of All Permanent, Full-Time Positions in U.S.**

All five listed principal management positions are occupied by U.S. citizens.  Pernix states that [***] of [***] permanent, full-time workforce are U.S. citizens.

**5. Technical and Financial Resources in United States Sufficient to Perform Contract**

Pernix provides evidence of bonding capacity, a Consolidated Balance Sheet showing [***] million in assets and [***] million in liabilities, and resumes indicating construction and business experience of its management and key personnel.  Not highly robust, but sufficient to support affirmative determination on this criterion for all three projects.

AR 106.

For Framaco, L/BA wrote:

**4. US Citizens in 80% of Principal Management Positions in U.S. and in More than Half of All Permanent, Full-Time Positions in U.S.**

All [***] listed principal management positions are occupied by U.S. citizens. Framaco fails to identify its total number of permanent, full-time employees, while saying that [***] are U.S. citizens.

**5. Technical and Financial Resources in United States Sufficient to Perform Contract**

Framaco provides a letter indicating adequate bonding capacity through [***] but does not otherwise identify technical or financial resources in the United States available for performance of the project.

L/BA recommends that a decision on prequalifying Framaco for Port Moresby and Matamoros be deferred pending provision by Framaco of additional information on items 4 and 5.

AR 114-15.

For Caddell, L/BA wrote:

**4. US Citizens in 80% of Principal Management Positions in U.S. and in More than Half of All Permanent, Full-Time Positions in U.S.**

All [***] listed principal management positions are occupied by U.S. citizens. Caddell states that [***] permanent, full-time employees are U.S. citizens of [***] total.

**5. Technical and Financial Resources in United States Sufficient to Perform Contract**

Caddell provides audited financial statement showing [***] million in assets as of 2014 including [***].

Since [***] remains in existence, it is problematic to consider [***] to be [***] successor notwithstanding the transfer of assets from [***].   Certifications instructions at p. 1 require de facto joint venture to rely on qualifications of a related entity.  Though this guarantee would not enhance Caddell's actual qualifications, it is recommended to ensure procedural regularity and consistency with the regulation and bid protest precedent.

AR 120-21.

For each offeror competing for the Port Moresby project, L/BA documented the total number of full-time, permanent employees and the number of United States citizens employed at each firm.  These numbers were as follows:

- BL Harbert: [***] employees were United States citizens[9]

---

[9]   [***] omitted the total number of its full-time, permanent employees.

- ECCI: more than [***] employees were United States citizens

- Nan Incorporated: [***] employees were United States citizens

- Perini: [***] employees were U.S. citizens

- ACC Construction: [***] employees were U.S. citizens

- AICI-SP: [***] employees were United States citizens

- Watts: [***] employees were United States citizens

- Pernix: [***] employees were United States citizens

- Caddell: [***] employees were United States citizens

- Framaco: [***] employees were United States citizens

AR 106-27.

In handwritten comments attached to the April 22, 2015 memorandum, L/BA found that Pernix, Nan Incorporated, and Perini Management Services prequalified for all projects, including Port Moresby, and that ECCI, ACC Construction, and AICI-SP prequalified for the Port Moresby and Matamoros projects, [***].  AR 101-02.

In the handwritten comments, L/BA noted:

Rest require correction or supplementation of prequalification submission:

#2 BLHI – [***]

$$*\qquad*\qquad*$$

#6 Framaco – Needs to complete cert. 6(b) and provide more info on tech/fin resources.  Doesn't prequalify for Colombo.

#10 Caddell – Needs de facto JV commitment from [***]

#13 Watts – [***]

AR 102.

The next day, on June 9, 2015, Framaco submitted an Amended Statement of Qualifications, and certified that it employs [***] full-time, permanent employees in the United States, all of whom are United States citizens.  AR 141.1.  Framaco also appended a May 28, 2015 letter from its bank, [***], stating:

FRAMACO INTERNATIONAL, INC. is a highly regarded and valued client of [***].  FRAMACO has been a client of [***] since 1992.  During the last 23 years, we have forged a strong banking relationship with FRAMACO and have witnessed the growth of this company.  [***] is providing working capital line of credit, L/C

facility and other instruments to assist FRAMACO with their growing business. During the last month we have been informed on FRAMACO's bid to the US STATE DEPARTMENT for the New Embassy 2015 program.

This letter is to inform you that based on our past and existing relationship with FRAMACO, [***] will be prepared to support the increase of the current working capital lines of credit and L/C's to [***], as [***] is looking forward to supporting the success of FRAMACO on these projects.

AR 141.12.  The letter was signed by the Vice President and Senior Relationship Manager of [***]. Id.

On June 30, 2015, Contracting Officer Fields apparently sent L/BA the supplemental information that L/BA identified in the evaluation worksheets it completed on June 8, 2015.[10]  The same day, L/BA responded.  AR 142.  This June 30, 2015 response is the last document in the AR before the Notification of Successful Prequalification addressed to Framaco.  See AR 142-43.  The June 30, 2015 response consists of one page.  AR 142.  The top third of the page is labeled "Memorandum," and is addressed to L/BA, from Contracting Officer Fields, regarding "Review of Additional Information for Pre-Qualification of Companies under Omnibus Act for Port Moresby, Papua New Guinea; Matamoros, Mexico and Columbo, Sri Lanka."  Id.  The body of the memorandum reads:

Attached for your review is the additional information that you requested in your memo of 6/8/2015 to further determine if B.L. Harbert; URS/AECOM; Caddell; Framaco and Watts can pre-qualify for the subject projects.

Id.  On the same page, a memo from L/BA to Contracting Officer Fields states:

The documents described above are this day 6-30-2015 returned to A/LM/AQM/FDCD/AE with the following comments:

#10 Caddell – Guarantee Agreement = de facto JV → Recommend Caddell be prequalified for all projects.

\*          \*          \*

#6 Framaco – Corrected Certification 6(b).  Adds letter from bank to bonding letter. Recommend you prequalify for Port Moresby + Matamoros but not Colombo.

Id.[11]  The AR does not contain any other record or documentation of DOS' prequalification determination for Caddell or Framaco.

---

[10]     Although all the firms whose prequalification packages were designated as incomplete apparently submitted additional information, the AR only contains the revised submission of Framaco.  AR 128.  The Court orders DOS to supplement the AR with the revised submissions of all firms.

[11]     These comments were handwritten.

On July 1, 2015, Contracting Officer Fields notified Caddell and Framaco that they had prequalified for the Phase II competition for the Port Moresby project. AR 143-44. A total of nine firms pre-qualified, but five subsequently withdrew from the Port Moresby competition. AR 145-46. Four firms – Framaco, Caddell, B.L. Harbert, and Pernix – submitted Phase II Technical and Price Evaluation proposals for the Port Moresby project on September 15, 2015. AR 993.

**Procedural History**

On August 21, 2015, Caddell filed this lawsuit, challenging the pre-qualification of Framaco and Pernix. Compl. 1.[12] The case was stayed from August 24, 2015, through September 25, 2015, during the pendency of a related case, Caddell Construction Co. v. United States, 123 Fed. Cl. 469 (2015). Order (Sept. 25, 2015).

On October 6, 2015, Plaintiff filed an amended complaint, challenging DOS' prequalification of Framaco in Phase I and award to Framaco in Phase II, but omitting any protest regarding Pernix. Am. Compl. 1.[13] On October 9, 2015, Defendant filed a notice informing this Court that DOS intended to "take corrective action in this matter by reevaluating the technical proposals of Framaco International, Inc. and Caddell Construction Co. and making a new award consistent with the terms of the solicitation." Def.'s Not. 1 (Oct. 9, 2015). Following its reevaluation, reopened discussions on key personnel, and consideration of Framaco's and Caddell's proposal amendments and clarifications, DOS determined that both Caddell and Framaco met the Solicitation requirements. AR 1285.

On November 20, 2015, DOS awarded the contract to Framaco. AR 1304. Caddell had submitted the next lowest priced offer eligible for award. AR 1213. On December 3, 2015, the parties notified the Court that the corrective action had not resolved the instant protest. Joint Status Rep. (Dec. 3, 2015). Defendant voluntarily suspended performance of the contract until March 1, 2016, and extended the stay until May 30, 2016, following the Court's oral remand order on February 10, 2016. Id., Def.'s Not. (Feb. 11, 2016).

## Discussion

**Jurisdiction and Standard of Review**

This Court has jurisdiction over bid protest actions pursuant to 28 U.S.C. § 1491(b). The Court evaluates bid protests under the Administrative Procedure Act's standard of review for an agency action. Bannum, Inc. v. United States, 404 F.3d 1346, 1351 (Fed. Cir. 2005) (citing Impresa Construzioni Geom. Domenico Garufi v. United States, 238 F.3d 1324, 1332 (Fed. Cir. 2001)). Under Rule 52.1 of the Rules of the Court of Federal Claims, the parties are limited to the AR, and the Court makes findings of fact as if it were conducting a trial on a paper record. See id.

---

[12]     Plaintiff also claims that DOS erred in finding Framaco's Phase II proposal technically acceptable with respect to staffing and subcontracting. In light of the Court's remand to DOS, the Court does not address Caddell's Phase II arguments in this opinion.

[13]     In its original complaint, Framaco alleged that DOS should not have prequalified Pernix in Phase I because Pernix did not meet the Security Act's total business volume and similar work requirements.

at 1354.  Looking to the AR, the Court must determine whether a party has met its burden of proof based on the evidence in the record.  Id. at 1355.

This Court will set aside an agency's procurement decision if the agency abused its discretion or acted arbitrarily, capriciously, or otherwise not in accordance with law.  5 U.S.C. § 706(2)(A) (2012); Adams & Assocs., Inc. v. United States, 741 F.3d 102, 105-06 (Fed. Cir. 2014); Ala. Aircraft Indus., Inc. - Birmingham v. United States, 586 F.3d 1372, 1375 (Fed. Cir. 2009).  The Court will "uphold a decision of less than ideal clarity if the agency's path may reasonably be discerned."  Bowman Transp., Inc. v. Ark.-Best Freight Sys., Inc., 419 U.S. 281, 286 (1974).  If this Court finds that the agency's actions were contrary to law or regulation, in order to obtain relief, the Plaintiff must also show that the violation was prejudicial.  Bannum, 404 F.3d at 1351.

## Caddell Does Not Challenge the Terms of the Solicitation

As an initial matter, Intervenor Framaco argues that Caddell's protest is an untimely challenge to the terms of the Notice of Solicitation and Solicitation and should be dismissed under the waiver rule articulated by the Federal Circuit in Blue & Gold Fleet, L.P. v. United States, 492 F.3d 1308 (Fed. Cir. 2007).  In Blue & Gold, the Federal Circuit found:

> [A] party who has the opportunity to object to the terms of a government solicitation containing a patent error and fails to do so prior to the close of the bidding process waives its ability to raise the same objection subsequently in a bid protest action in the Court of Federal Claims.

492 F.3d at 1313.

With regard to Phase I, Framaco asserts that Caddell is challenging failure of the Notice of Solicitation and the RFP to include the following prequalification requirements:

- That the offeror have more than [***] United States staff;

- That the offeror have a specific bonding amount and at least over [***] million in bonding from one surety;

- That the offeror have a specific threshold line of credit and at least, more than a [***] million line of credit from one bank;

- That the offeror include specified financial information, including information on working capital, financial statements and assets of a certain level.

Framaco's Opp'n. 16.

Framaco misconstrues Caddell's protest.  Caddell is not challenging either the terms of the Notice of Solicitation or the Solicitation or the omission of particular requirements.  Instead, Caddell challenges the agency's evaluation of Framaco and its application of the prequalification criteria and source selection criteria to Framaco.  Caddell does not object to DOS' reliance on the Security Act and its implementing regulations as prequalification criteria.  Because this is a straightforward challenge to DOS' evaluation, Blue & Gold is inapplicable.

## Whether DOS' Decision to Pre-Qualify Framaco was Arbitrary, Capricious, or Contrary to Law

Caddell argues that DOS acted arbitrarily and capriciously by prequalifying Framaco under the Security Act because Framaco lacked the requisite technical and financial resources to perform the contract.  To prequalify under Phase I, an offeror had to meet the Security Act's requirement that the offeror qualify as a "United States person," that is, the offeror had to demonstrate "the existing technical and financial resources in the United States to perform the contract."  22 U.S.C. § 4852(c)(2)(G).

DOS' regulations implementing this Section of the Security Act provide:

7. Section 402(c)(2)(G): "The term 'United States person' means a person which has the existing technical and financial resources in the United States to perform this contract."

Definitions for purposes of Section 402 determinations of eligibility—

Existing technical and financial resources means the capability of the prospective bidder/offeror to mobilize adequate staffing and monetary arrangements from within the United States sufficient to perform the contract.  Adequate staffing levels may be demonstrated by presenting the resumes of current United States citizens and resident aliens with skills and expertise necessary for the work in which the prospective bidder/offeror is interested or some other indication of available United States citizen or permanent legal resident human resources.   Demonstration of adequate financial resources must be issued by entities that are subject to the jurisdiction of United States courts and have agents located within the United States for acceptance of service of process.

48 C.F.R. § 652.236-72(d).

Caddell argues that DOS could not reasonably have found that Framaco met the technical and financial resources requirement of the Security Act because Framaco's offer of [***] United States employees and a [***] million line of credit were insufficient to perform this $95 million construction project.

## DOS' Determination That Framaco Had Existing Financial Resources In The United States to Perform This Contract

Caddell argues that DOS did not reasonably evaluate Framaco's financial resources for purposes of the Phase I prequalification because Framaco did not provide sufficient evidence of "existing financial resources."  Caddell argues that Framaco's evidence of access to financial resources - - the May 28, 2015 letter from its bank - - only provides a [***] million line of credit to perform a $95 million contract.  Caddell argues that this bank letter fails to establish Framaco's current credit limit or to explain how much of Framaco's credit is currently encumbered on other projects.  However, as Defendant and Framaco argue, nothing in the Notice of Solicitation required Framaco to demonstrate any particular level of financial resources or to submit any particular type

of documentation, and DOS knew that Framaco could fund its future work using progress payments.

The agency has considerable discretion in assessing an offeror's financial wherewithal to perform.  In an analogous context where an agency, in determining an offeror's responsibility, assesses whether an offeror would have adequate financial resources to perform a contract, courts have recognized that these type of financial calls are quintessential business judgments, not appropriate for second-guessing.  E.g., Commc'n Constr. Servs., Inc. v. United States, 116 Fed. Cl. 233, 272-73 (2014) ("CCS").  As this Court explained in CCS:

> In Bender Shipbuilding, the Federal Circuit affirmed a financial responsibility determination where the Army awarded a contract to a bidder that had recently filed for bankruptcy under Chapter 11.  The contracting officer in Bender Shipbuilding acknowledged the seriousness of the company's financial situation but awarded it the contract, based in part on a guarantee of performance by the offeror's parent company and the availability of progress payments under the contract.  In upholding the decision, the Federal Circuit noted the "wide discretion" that contracting officers have in making responsibility determinations and acknowledged that the awardee and its parent had financial problems, but did not disturb the contracting officer's determination that the awardee was financially responsible.

116 Fed. Cl. at 273 (citing Bender Shipbuilding & Repair Co. v. United States, 297 F.3d 1358, 1360, 1362-63 (Fed. Cir. 2002)).  In CCS, this Court upheld a contracting officer's determination that an offeror with significant debt was financially responsible, since the firm was performing "per its agreed loan terms" and the bank "was comfortable with [the firm's] ability to meet its obligations." 116 Fed. Cl. at 272.

In the instant case, Framaco has access to [***] million in credit from its United States bank, as well as access to surety credit from a United States company, ability to obtain bonding, and the ability to receive progress payments if awarded the contract - - a far cry from bankruptcy or significant debt.[14]   As such, it was reasonable for DOS to prequalify Framaco on the basis that it had existing financial resources in the United States to perform the contract.

**DOS' Determination That Framaco Had Existing Technical Resources In The United States To Perform This Contract**

Caddell argues that DOS could not reasonably find that Framaco had adequate technical resources because Framaco has [***] full-time employees in the United States.  Caddell states, "[U]nder no reasonable interpretation [of the Security Act] can [***] full time employees be

---

[14]     Although Defendant and Framaco cite a September 19, 2015 Dun & Bradstreet report as evidence of Framaco's financial capability for purposes of prequalification, the Court does not rely upon this report.  The Dun & Bradstreet report did not exist at the time the agency issued its prequalification determination on July 15, 2015, and DOS did not consult this report until September 29, 2015, when it was assessing Framaco's responsibility at the end of Phase II.

deemed sufficient for Framaco to perform this $95 million contract."[15]  Pl.'s Mot. for J. on the AR 25.  In its reply, Defendant argues, "Caddell offers no support for its conclusion that [***] full-time staff members [were] not enough to manage this project."  Def.'s Reply 3-4.  Defendant attempts to turn the tables by requiring a protestor to demonstrate how an unexplained agency action was unresaonable.  Caddell's so-called "conclusion" is not being challenged here.  DOS' determination that [***] full-time United States employees met the Phase I Security Act requirement is at issue.  Yet DOS offered no explanation of why it reached this determination, effectively making the agency action unreviewable on the record as it stands.

In response to Certification 6(b) (certifying the number of the offeror's total employees and United States citizen employees) in its initial prequalification submission, Framaco informed DOS that it employed [***] United States citizens in the United States.

DOS evaluated Framaco's response as follows:

All [***] listed principal management positions are occupied by U.S. citizens.  Framaco fails to identify its total number of permanent, full-time employees, while saying that [***] are U.S. citizens.

AR 114.

DOS requested additional information from Framaco, and Framaco submitted its revised prequalification submission, confirming that it had [***] full-time employees in the United States.  AR 141.1.  DOS' only response was to note "Corrected Certification 6(b)."  AR 142.  The record contains no Contracting Officer decision on prequalification - - there is not even a statement in the record by the Contracting Officer approving or accepting L/BA's recommendation.  There is no explanation of why DOS determined that Framaco met the existing technical resources requirement.

Defendant cannot prevail in an APA review action merely by harping on Plaintiff having the burden of proof, without pointing to some rationale the agency articulated in support of its determination.  While Plaintiff has the burden of proving the agency's conduct was arbitrary and capricious, the agency has a legal responsibility in making administrative decisions in the first place - - the fundamental requirement of articulating a reason for the decision or choice it made.

The law is clear that the agency "must examine the relevant data and articulate a satisfactory explanation for its action including a 'rational connection between the facts found and the choice made.'"  Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co., 463 U.S. 29, 43 (1983) (quoting Burlington Truck Lines v. United States, 371 U.S. 156, 168 (1962)).  As the Supreme Court has explained:

---

[15]  In support of this argument, Caddell cites an "unsatisfactory" interim evaluation that Framaco received during the course of building an embassy in Belgrade, Serbia, under a different contract.  However, the record does not indicate how many United States employees Framaco had for the Belgrade project, and Framaco submitted these assessments as part of its technical proposal in Phase II, not as part of its Phase I prequalification submission.  In any event, the unsatisfactory performance assessment that Caddell cites was an interim report, and Framaco received a grade of "satisfactory" on its overall performance of the Belgrade embassy contract.

If the administrative action is to be tested by the basis upon which it purports to rest, that basis must be set forth with such clarity as to be understandable. It will not do for a court to be compelled to guess at the theory underlying the agency's action; nor can a court be expected to chisel that which must be precise from what the agency has left vague and indecisive. In other words, "We must know what a decision means before the duty becomes ours to say whether it is right or wrong."

Sec. & Exch. Comm'n v. Chenery Corp., 332 U.S. 194, 196-97 (1947) (quoting United States v. Chi., M., St. P. & P.R. Co., 294 U.S. 499, 511 (1935)). The Court "cannot supply a basis for agency action that the agency has not itself provided." Balestra v. United States, 803 F.3d 1363, 1373 (Fed. Cir. 2015).

Because DOS did not indicate why it found that Framaco's prequalification submission demonstrated the requisite existing technical resources - - why [***] United States employees were sufficient - - the Court cannot ascertain whether DOS' determination was arbitrary or capricious. Of the 10 offerors seeking to be prequalified for the Port Moresby project, Framaco proposed by far the fewest full-time United States employees - - Pernix had [***] United States employees, BL Harbert had [***], ECCI had at least [***] United States employees, Nan Incorporated had [***], Perini had [***], ACC Construction Company had [***], Caddell had [***], AICI-SP had [***], and Watts had [***]. Although Framaco had the lowest number of United States employees in a wide range, spanning from [***] to [***], DOS did not articulate why it determined that so few full-time United States employees met the criteria of the Security Act.

This is a significant omission in a procurement of this nature. Offerors could only submit proof that they met Security Act requirements for a United States person in the Phase I prequalification. See AR 317. This aspect of compliance with the Security Act was not to be revisited in Phase II and was not an element of the technical evaluation. Id. As such, DOS' Phase I evaluations took on enhanced importance as they not only opened the door for offerors to submit proposals for the Phase II round of evaluations, but they determined whether offerors met a statutory mandate for fitness to perform work overseas in the context of potential security concerns.

## Order

1. The Court remands this matter to DOS to reevaluate Framaco's Phase I prequalification submission to determine whether Framaco has the "existing technical resources" in the United States to perform the contract as required by the Security Act, DOS' regulation, and the Notice of Solicitation. DOS shall explain and document its determination resulting from the reevaluation.

2. DOS shall complete its reevaluation of Framaco's technical resources and shall file a supplement to the AR documenting its determination by **February 22, 2016**. As reflected in the June 8, 2015 memorandum from L/BA, it is the responsibility of the Contracting Officer to make this determination.

3. DOS shall further supplement the AR with all DOS communications advising offerors to submit additional information for the Phase I evaluation and all responses.

4.  The Court defers resolution of the parties' pending motions for judgment on the AR pending DOS' supplementation of the AR as ordered herein.

5.  The Court will convene a telephonic status conference on **February 29, 2016**, **at 2:30 p.m. EST.**  The Court will initiate the call.

<u>s/Mary Ellen Coster Williams</u>
**MARY ELLEN COSTER WILLIAMS**
**Judge**